Good morning, Your Honors. Briefly, my clients purchased 219 acres in 1994 inside the city's urban growth boundary but outside the city limits and proceeded to seek annexation into the city to get development of the property. All of the applications that they made for annexation met all of the requirements for the city for a comprehensive planning and zoning ordinance requirements and state law and the city adopted findings saying that they were in complete compliance. We cited in the record where the city officials said the design for development of this property was excellent. They all agreed with that. However, virtually every one of their annexations were either denied or delayed. And part of the critical thing here is in 1996 there was a proposal to have a charter amendment to allow the citizens to peel off that yes or no vote by the city council to let the citizens do that. And while that was pending, two annexations were brought by my clients. The first one was denied because on the excuse that he didn't have a master plan for the whole property and he didn't bring all of the property into the annexation. And what's significant there is that that's the only annexation that they ever required. It wasn't required in their ordinances or comprehensive state law. All the other annexations before and after the charter amendment, they never required that of anybody else, just my client. The second annexation, which could have been done before the charter amendment became final, they continued indefinitely. It's never been decided. It hasn't been decided up until today as we speak right now. So now I'd like to talk about two broad overviews that really weren't covered very well probably in the briefing because they were so wrapped up in the details. But one overview is the vote itself. Oregon Constitution has a provision that preserves the rights of referendum and initiative that separates it from the legislature's delegated authority to cities to do land use planning. What we have in this case is something different. What the citizens did is they went and got an amendment to the city's charter. The charter is that part that was delegated down from the legislature. So when they peeled off the right to vote, they're still peeling off the right to vote, subject to all the state statutes that the legislature says and how cities will carry out their land use planning authority. So it's a slightly different animal. In other words, the citizens didn't come in every time the city granted an annexation and then got a referendum against that vote. That isn't how this was done. The other overview I'd like to talk about is, yes, the legislature a long, long time ago granted authority to cities to do annexations, granted authority to do public facilities and services inside and outside of their boundaries, but that didn't work out. And as probably everybody that's lived in Oregon knows, Senate Bill 100 came in many, many years ago because the legislature was not satisfied how the cities did this function, and they adopted what I'll call an umbrella that put over all of those functions and imposed land use planning statewide and particularly over cities and counties. And in that, they adopted certain statutes, 197 being a critical one, but they modified 215 and 227 to put minimum standards on how cities would function. And part of that is the goals. There's one goal for public facilities and planning, there's a goal for annexation under 14, and so forth. So the state went in, and that is the total picture of the regulatory, whether you're looking at the intent of the state or whether you're setting minimum standards under due process for the Oregon Constitution, these are the crux of how all of those statutes have to be read together for determining what is the responsibility of the city and whether they rose up to at least come close to meeting that. Here, they didn't even attempt to. So there's a commonality that runs through all of this, but for all the causes of action that arise out of that, and what I want to point out here is that our first cause of action in state court, we brought this all in state court because it raises a whole bunch of first impression questions to the Oregon appellate court system. First was the D.J., a declaratory judging action, to raise all of these, and that included this problem of the vote where we have this unique situation where the citizens said no. They didn't have any standards in making that. There were no standards presented to them to make that. They just made this decision no, and over here we have the city saying our land use decision finds yes. That's all we've got. They don't make a land use decision supporting the vote. In a way, it's like that land use decision got X'd out, and the only thing before us is a no vote with no standards, which violates the federal and state constitutional standards, arbitrary and capricious, but the Oregon Supreme Court has never even reviewed this issue where you have that dichotomy of an unsupported no vote, and the only city decision under the state statutes for land use decisions is a yes, and all of the factors supporting that yes. So if I may, I'd like to jump to the statutes real quick. We've got them in the brief, yes, but there are two that I think are really critical, and they're all mandatory. This is all shall. One is 227.173, subsection 3. This applies to all land use decisions that are made by a city in this state, and it's, quote, approval or denial, so it applies here. That requires a set of findings for their decision that supports their decision. The findings have to address all of the approval criteria which come under the state statutes and the comprehensive plan that the city adopted, and it has to have supporting facts, and it has to have a reasoned justification for its decision. So that's a minimum standard set by the state of Oregon, period. The other one that is just critical to this case as far as I'm concerned is ORS 197.522. It comes in two parts. The first part is, quote, a local government shall approve an application for a permit or other approval necessary. I read that to mean other approval necessary would include an annexation. You can't get development of the property. It's necessary to first do the annexation according to the city's policies. So then it goes on that you shall make that approval on any land that is consistent with the comprehensive plan and applicable land use regulations. Well, they did make findings that we satisfied all that. They were mandatory that they approve it. Now, the city has come in and said, and the district court apparently agreed with that, was, well, gee, they have this charter amendment, and that's a different regulation, and how do you square that when they said no? And that's where the second part of this comes in, 197.522. It says, quote, OR shall impose reasonable conditions on the application to make the proposed activity consistent with the plan and the applicable regulations. The city had two windows of opportunity to comply with this state provision, which says shall. One is they could have presented other conditions to the voters to vote on that would have brought all of this in compliance, and they didn't do that. And when the voters said no and it came back to the city council and they commemorated that decision with an order, again they had a responsibility to impose conditions to make it all work together, that the city would have been able to allow the development to meet all of their state requirements, and remember they had in their findings that they also were violating, they weren't in compliance with needed housing requirements, which is a totally separate argument and separate statute, which also have mandatory provisions. They could have brought all that together and incorporated the citizens' vote and met the state statute, but they didn't do that. And they're clearly in violation then of state law. And I suppose... Why does that make it a federal case? Well, one, I agree with you. I think this case should be back in state court. I don't think it should ever have been brought up here. And we've supported, we've raised the issue about remand all the way through. The only problem is you allege federal claims. And they're not mature yet. And that's what Hamilton Bank has... For purposes of removal, when you do removal, removal remand, removal jurisdiction remand, you look at the complaint and you look at the allegations in the complaint. You allege, just put it aside all the constitutional claims. For example, you allege the claim under the antitrust laws. Correct. Well, that's going to get you into federal court any way you cut it. And as I said before when we cited cases, the bottom line was the district court based this decision on state action immunity. And the state court, I mean the district court... It's a different question though. The question is whether or not removal was proper. Removal was proper. I think it's 13, I can't remember now the removal statute. Yes, I understand the statute. If you'll bear with me, I'll explain my reasoning. State action immunity was the basis for the district court's determination. If the legislature of Oregon has determined what rises to the level of what their intent was, incorporates the land use decisions, that's the level before state action immunity can arise. And the Oregon Supreme Court essentially has never ruled on whether these state statutes in the antitrust context reaches that point of state action immunity. So that's a question of first impression. That's one. And two, that means in my view it's not mature for the state antitrust claims to be brought forth because the state... I'm not talking about, I wasn't talking about state antitrust claims. I was talking about the federal antitrust claim that you filed, which shows that that claim arises under federal law. I misspoke myself. That's what I was saying. That's what I meant was that the federal antitrust laws are providing a remedy. Whereas the state antitrust laws provide a remedy. The federal laws on two points. One is in Hamilton Bank. How can you determine whether there's been an adequate remedy for the federal antitrust laws to apply when the state remedy hasn't even been resolved yet? That's one. And two, if there's no state action immunity here, then how is the situation of these violations of state law going to be addressed by a federal court on antitrust when there's so many cases of first impression, so many issues of first impression under those statutes that the federal court can't address? What I'm trying to say is they should allow the state to address all those issues first before it would accept jurisdiction. So in my view, that's the abstention argument, that the antitrust case should be abstained and the other cases remanded back. Even though the case was properly removed, the district court should have abstained. Yes. And that's how I think, I personally believe that's how this case ought to be handled. All of the constitutional issues should be remanded back to state court and this court should exercise abstention as to the antitrust. And then, after the state court has resolved everything, if there's anything remaining for adequacy, then the federal court would look at that. Now, we talked about the state statutes. I would like to point out something about Hamilton- pardon me, I want to jump into the question that was left in this, is annexation then a land use decision? And we cited the cases that in Cape versus the city of Beaverton, it specifically says that whether you have comprehensive plan provisions that address the annexation or you don't have comprehensive plan provisions that address the annexation and the state has the Oregon Administrative Rule, one way or another, all annexations are land use decisions and must meet these minimum standards we talked about in 197, 215, and 227. And then the court said at the very end of that decision, at page 265, it reaffirmed what Luba said, and here's what Luba said. When you have a vote and a state standard for a land use decision, quote, the annexation could become an accomplished fact before the city establishes that the decision to annex is consistent with the relevant land use criteria that govern the decision to annex. In other words, we submit our annexation application to the city, the city of McMinnville could have put it to the voters right then. When they said no, then they could have moved that to the city council hearing, held their land use decision, and got all their findings to support denial, but they didn't do that. They didn't do that. They didn't follow that policy. The other side of it is that, and recited Dan Guile, and Dan Guile says at page 1026, the governing body must and the electorate cannot follow the procedures or be confined to the substance of those requirements. In sum, to hold that a land use decision may be referred to the electorate would be the equivalent of holding that it need not be made in compliance with the procedural and substantive requirements of state statutes. So clearly the state of Oregon is saying we don't care if you do a vote, but the total package of the vote and the land use decision together, you still have to meet state standards. You still have to meet those minimum state standards, and they didn't do that. The record is blatantly obvious that they didn't. Now, as I pointed out when we were discussing it before, there's a ton of first impression issues in this case. We've got the D.J., the conflict between the vote and the denial under the land use side. We have the problem of them just carving out the vote on the land use side, so that means that the vote itself should have had supporting findings and conclusions. All those are issues that haven't been before the Oregon Supreme Court before. Another first impression is this umbrella of minimum requirements under the state statutes. Does that set the level under the Oregon Constitution, Article I, Section 10, for due process requirements? That hasn't been before the Oregon Supreme Court before. Also, we have the OLEC decision, the U.S. Supreme Court decision in OLEC, finding a class of one. That issue has not been before the Oregon Supreme Court, whether that applies under the Oregon Constitution for Article I, Section 20. And, again, we talked about the antitrust ones. The district court seemed to not worry about any of these annexation issues and said, well, there's a two-year statute of limitations, so I don't have to address any of that, and I don't have to consider that as part of all these clauses of action, including the antitrust. And the problem with that is the U.S. Supreme Court has said that the federal court has to look at the gravamen in the action before looking down into the state court to apply the proper statute. And here the Oregon Supreme Court has long since already declared what the gravamen of the action is. In Seuss and the two state highway cases I cited, the Oregon Supreme Court has clearly stated that when you are involved in a case that is a substantial interference with property rights, the Oregon Supreme Court says that is a direct compensatory claim under the Oregon Constitution. And it is not a tort. It is not a tort that applies a two-year statute of limitations. And, in fact, in Seuss, my client brought that case with a regulatory taking and due process and other civil rights matters up. The city of Beaverton raised that OG, the four-year period that was involved in this activity in there, violated a two-year statute of limitations. The Oregon Supreme Court said no and remanded all of those cases except the discriminatory claim under 1984. They remanded everything else back down under ORS 12.080 subsection 3, which is a six-year statute of limitations. So the district court here was clearly wrong, and that applies to all of those causes of action. On taking, the district court also addressed the issue, saying that we hadn't provided a reminder. I think you wanted to keep two minutes. Yes, I'd like to rebuttal. Thank you, Your Honor. It's up to you, really. Ms. Spears will now hear from the city of McNinville. Yes. Please, the Court. Marjorie Spears for the city of McNinville. Seven issues. It's hard to know where to start here. So I'd just like to first make a general statement, which is that counsel is repeatedly saying that the city did not meet various planning requirements in denying the requests. The city, however, granted all of the requests. We granted them four times, and counsel is correct. The city liked the plans. The city would have liked to have them brought forth into a new subdivision or whatever it was going to be. But the voters voted against it. It wasn't the city's action. The city did everything it was supposed to do under the land use rules and regulations, and then the voters voted it down. And the only thing that was not sent to the voters was a request to extend services to the land within the boundary that wasn't within the city. And plaintiff testified as to that. In his deposition, he was asked, this is on the SCR page 17, was there anything improper in your mind in the city rejecting your proposal in 2003, which was to extend services? I guess that would be a question you'd have to ask the city. Well, I'm asking you, though, sir. Well, whoever, all I know is they made a decision I had to live with. Are you complaining about that decision in this lawsuit? It's a part of the lawsuit, yes. So what was wrong about their decision? Well, I guess I couldn't say the decision was wrong. I would say it was inconsistent with what I wanted to have happen. So as to the only thing that the city actually did, the defendant has said he didn't think there was anything wrong with that. Now, getting to some of the specific points made by counsel, the Dan-Gile or Gile, I'm not sure how it's pronounced, case is very important because in that case, the Oregon court ruled that an annexation decision by the city is a land use decision that's subject to LUBA review, and that is the final decision by the city. So if the city had denied it, they would go straight to LUBA with that. The city granted it. It then goes to the citizens who do not have to follow land use guidelines. That's what Dan-Gile says. They distinguish what was before them in Dan-Gile because it was a zoning change. But they said in other cases where you're talking about annexation, the city makes its decision and the voters get to vote. We didn't do the voting. We wanted the plan to go forward. We're sorry that it didn't go forward. So I'm not, I just, it's hard for me to know where's the beef because the city didn't do this. Plaintiff knew that the extension into the parcel outside the city limits was not allowed by the urban growth boundary agreement because he asked to have it modified in order to do it. In terms of the statutes that were mentioned, there is no indication that the city did not follow those statutes. The city did follow the statutes, approved the annexation requests. In terms of the motion to remand, plaintiff has based that upon his argument that the federal claims are not ripe. In order to determine ripeness, there are two steps. One is there has to be a final decision by the government entity charged with making the decision. There was a final decision here. They have not argued that there was not. What they are arguing is that state compensation remedies were not exhausted. That requirement only applies to taking. I'm sorry, only, yes, it only applies to the taking claim. Your Williamson. Pardon? Williamson doesn't say that Sineola Lake Owners Association, this case said, and that's in my brief, that it did not, let me see. It's not a basis for, the second prong, it's not a basis for denying anything except the taking. So that second prong kept their federal taking claim from being ripe. The district court agreed with that and dismissed it. And so they didn't have that claim any longer because they brought it to the court's attention that even though they brought the case, it wasn't ripe. I don't, you know, maybe we can just write down a few. As I understood, the basic argument was, is that the case was removed to federal court. And the court should have abstained rather than dismissed everything. But removal is a little bit different. Right. The federal court jurisdiction and what he said, as I understand what the argument, but I gathered all these issues that he's pointing to, issues of first impression and whatnot that yet not have been resolved, that the federal court should have stayed out of this whole thing and just abstained. Well, first of all, abstention. And dismissed those claims and let them go back to state court so the state court could litigate those claims. Right. Abstention is hardly ever utilized, first of all. In terms of the conflict between what the city does and what the voters do, that was decided in the Dan Giles case, so that it's not a case of first impression. The minimum requirements were met, so that's not an issue that needs to be looked at. Class of one, the Oregon courts have used that. And it's not an issue of us. We didn't deny that they could have a class of one. We never said they couldn't have a class of one or that that was any kind of an issue. So none of those needed to go back. Plaintiff has stated in one part of the reply brief that this is a land use decision. The plaintiff also says it didn't have to go to LUVA. But if it was a land use decision and they didn't like the land use decision, then it did have to go to LUVA. If they thought that the land use planning statutes were not being followed, then they go to LCDC and ask for an enforcement order. So they had those various things that they could have done. I'm not going to go into our motion to strike a lot of the reply. You know what our position is on that. I will say that if you were going to seriously address any of those issues, I'd like to have a chance to briefly. On the equal protection claim, I want to talk about the statute of limitations. The Wilson v. Garcia case says that for 1983 claims, the state statute for personal injury applies regardless of the theory behind the claim. It doesn't matter if it was a land use claim. It doesn't matter what kind of claim it was. For a 1983 claim, the state statute for personal injury, that statute is two years. The fact that the Oregon Supreme Court has applied a different statute in some land use cases doesn't matter what the Wilson court said. We want something uniform for all the 1983 claims. We don't want to be picking shoes for each different one. Sue Spilder's case that counsel cited said that there was a six-year statute of limitations for a state taking claim. All of the cases cited by plaintiffs predate Wilson, which is the case it does say. And then the Oregon, sorry, this case, this court in the same case, SAIN in 2002, said that the Oregon statute of limitations for personal injury is two years, and that's what would apply. Okay. Again, with the antitrust, state action immunity, did the legislature authorize the challenge actions? It did. Did the legislature intend to displace competition with the regulation? All that has to be shown is that it was contemplated that it could do that. The city plaintiffs is repeatedly saying the city didn't follow the mandatory provisions, but the city did approve plaintiffs' requests. So, again, their beef is with the voters. I think I have pretty much spoken to what was raised by counsel. Are there any further questions? I just reviewed the brief, so you don't have to use up the whole 20 minutes if you don't want to. Thank you. Thank you. Mr. Schonkweiler, you have about three minutes, please. First off, defense counsel talks about, again, the deposition. He couldn't figure out what was wrong with the rejected services. What's wrong with the rejected services is what ORS 197.522 says, that they have to attach conditions for these land use approvals, and we were giving the city an opportunity to attach conditions, and that condition could be, quite simply, to make this all fit together under the state statutes, is they could grant us our extraterritorial services to do urban development in the urban growth boundary. The city has authority delegated from the county to do planning for urban development to approve it, so they could have approved our project inside the urban growth boundary and had the services, urban services for it, without annexing it into the city. We'd pay for all that. We'd satisfy virtually all of it. We'd satisfy the no vote because the vote went to the citizens. The only thing they asked for was it not be annexed to the city. There was nothing in that charter amendment that said, we want to have a vote on whether you extend services. We want to have a vote on whether you approve urban development in the urban growth boundary. There was none of that in the city charter. The city clearly could have satisfied virtually everything, including the vote, by granting those requests that we made, and they should have done them back for each of the annexations. That's what's wrong. That's where the state statute's violated. She says, gee, we could have gone to lieu, but we've cited the cases, Boise Cascade and a bunch of others, that identified that LUBA doesn't have jurisdiction to grant compensation for constitutional violations. The Oregon Supreme Court has said that repeatedly. They said that the circuit court maintains jurisdiction to do that. That's with Boise Cascade, and I forget the other case. It's the leading case on that. I'm sorry to say your time is up. Okay. If you have 30 seconds to finish the sentence. All right. One last thing. She said that we're not contesting that there was a final decision here. Well, annexation 1096 is still pending. That recovered the whole property, went way back to the charter amendment. They still haven't decided that one. They continue that indefinitely. So one decision clearly is not final. The other nine don't meet the Hamilton bank requirement. Okay. Thank you, Mr. Shankwar. The case of Jones versus city of McMinnville shall be submitted.
judges: Gould, Paez, Rawlinson